UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

DAVID CONYERS and LAMEL NALLEY

**AMENDED COMPLAINT**

Plaintiffs,

JURY TRIAL DEMANDED

-against-

THE CITY OF NEW YORK, a municipal corporation;
DETECTIVE KEITH MCDOWELL, in his individual and official
capacities, DETECTIVE JONATHAN QUINTO, in his individual
and official capacities, POLICE OFFICER EFRAIN MORALES,
in his individual and official capacities, UNDER COVER
OFFICER #338 in his individual and official capacities, and
UNDER COVER OFFICER #239, in his individual and official
capacities.

Defendants.
-------------------------------------------------------------------------X

Plaintiffs, DAVID CONYERS and LAMEL NALLEY, by their attorneys, Moore Zeman Womble, LLP, allege for her complaint against the defendants as follows:

**PRELIMINARY STATEMENT**

1. Plaintiffs, David Conyers and Lamel Nalley, brings this action for compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. §§ 1981, 1983 and 1988, and by the Fourth Amendment, Fifth Amendment, Equal Protection and Due Process Clauses of the Fourteenth Amendment of the United States Constitution, and for rights secured under the laws and Constitution of the State of New York. Plaintiffs were deprived of their constitutional and common law rights when the individual defendants unlawfully confined plaintiffs, and caused the unjustifiable arrest and prosecution of plaintiffs. Plaintiffs seek damages, compensatory and punitive, affirmative and equitable relief, and award of costs and attorney's fees

and such other and further relief as this court deems equitable and just.

## JURISDICTION

2. This action is brought pursuant to 42 U.S.C. §§ 1981, 1983 and 1988 and the Fourth and Fourteenth Amendments to the United States Constitution.

3. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343, 1343(a)(3) and (4), and 1367(a) this being an action seeking redress for the violations of the Plaintiffs' constitutional and civil rights. The amount of damages in controversy is in excess of one hundred and twenty-five thousand dollars ($125,000.00), exclusive of interests and costs.

4. Plaintiffs further invoke this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over any and all state constitutional or common law claims that are so related to the claims within the original jurisdiction of this Court that they form part of the same controversy.

## VENUE

5. Venue is properly laid in the Eastern District of New York under 28 U.S.C. § 1391(b)(2), in that this is the District in which the events or omissions underlying the claims arose.

## JURY DEMAND

6. Plaintiffs respectfully demand a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

7. The Plaintiffs are African American males who were at all relevant times citizens of the City and State of New York.

8. Defendant, the City of New York, was and is a municipal corporation duly

organized and existing under and by virtue of the laws of the State of New York.

9. Defendant, the City of New York, maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, the City of New York.

10. At all times hereinafter mentioned, the individually named defendants, Detective Keith McDowell, Undercover Police Officer #338, Undercover Police Officer #239, Detective Jonathan Quinto, and Police Officer Efrain Morales, were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

11. At all times hereinafter mentioned, the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

12. Each and all of the acts of the individual defendants alleged herein were done by said defendants while acting within the scope of their employment by defendant City of New York.

13. Each and all of the acts of the individual defendants alleged herein were done by said defendants while acting in furtherance of their employment by defendant City of New York.

## FACTS

14. On February 3, 2016, at approximately 6:25 p.m., plaintiff DAVID CONYERS was driving his car in the vicinity of 361 Broadway in Brooklyn, New York, with his friend, plaintiff LAMEL NALLEY riding in the front passenger seat.

15. At the time the two plaintiffs were on their way to the mechanic.

3

16. As he was driving down the street, Mr. Conyers saw an acquaintance he had not seen in some time.

17. Plaintiff Conyers pulled his car over and had a brief conversation with this individual.

18. Mr. Conyers resumed driving and after approximately eight blocks, despite having committed no crime or violation of vehicle or traffic regulations, an unmarked police car pulled in front of Mr. Conyers' car and two detectives jumped out, pointing guns at plaintiff Conyers and plaintiff Nalley.

19. Plaintiff Conyers and plaintiff Nalley, afraid for their lives, put their hands in the air and cooperated fully with the defendant officers who had their guns pointed at plaintiffs.

20. In compliance with the officers' demands, both plaintiff Conyers and Nalley exited the vehicle.

21. Mr. Conyers was immediately patted down and searched and no illegal substances or paraphernalia were recovered from him.

22. Mr. Nalley was immediately patted down and searched and no illegal substances or paraphernalia were recovered from him.

23. Mr. Conyers, who weighs more than 270 pounds, was then unjustifiably "rear cuffed" (hands cuffed behind his back) with a single pair of handcuffs, in an overtight manner, causing him to suffer significant and protracted pain.

24. Plaintiff Conyers repeatedly asked for the police officers to loosen the cuffs or double cuff or front cuff him.

25. These requests were repeatedly ignored.

26. Plaintiffs Conyers and Nalley were then placed into the back of a police van and

4

driven around for some time before ultimately being brought to the 90th Precinct.

27. When they were finally delivered to the 9th Precinct, plaintiff Conyers and plaintiff Nalley were again searched for illegal contraband.

28. Nothing illegal was found on either plaintiff Conyers or plaintiff Nalley.

29. Despite plaintiff Conyers' injuries and repeated requests that the handcuffs be loosened or removed, and notwithstanding the obvious signs that Mr. Conyers was in excruciating pain, none of the defendant officers loosened the handcuffs, thereby subjecting Mr. Conyers to excruciating pain and discomfort for an extended period of time.

30. Mr. Conyers, was than charged with three (3) felonies and two (2) misdemeanors: two (2) counts of Penal Law Section 220.16(1) (Criminal Possession of a Controlled Substance in the Third Degree); two (2) counts of Penal Law Section 220.03 (Criminal Possession of a Controlled Substance in the Seventh Degree); and one (1) count of Penal Law Section 220.39(1) (Criminal Sale of a Controlled Substance in the Third Degree).

31. Mr. Nalley, was than charged with two (2) felonies and one (1) misdemeanor: Penal Law Section 220.16(1) (Criminal Possession of a Controlled Substance in the Third Degree); Penal Law Section 220.03 (Criminal Possession of a Controlled Substance in the Seventh Degree); and Penal Law Section 220.39(1) (Criminal Sale of a Controlled Substance in the Third Degree).

32. Plaintiffs Conyers and Nalley spent the night in a holding cell at the 90th Precinct before being transferred to Central Bookings in the Criminal Courthouse in Downtown Brooklyn.

33. The cell in Central Booking was filthy and infested with pests. The toilets were covered in feces, urine and other types of human discharge and there were no beds or cots for plaintiff and other detainees to sleep on.

34. At the arraignment, where Mr. Conyers was falsely accused of having committed

5

three felonies and two misdemeanors, bail was set and Plaintiff Conyers remained in custody until a family member was able to bail him out.

35. Similarly, at arraignment Mr. Nalley was falsely accused of committing two felonies and one misdemeanor.

36. Plaintiff Conyers returned to court on February 9th, where his attorney re-asserted plaintiff Conyers' intention to testify in the Grand Jury regarding these allegations.

37. On February 29th Mr. Conyers returned to Brooklyn Supreme Court where he testified under oath about the events of February 3rd, 2016.

38. Later that same day, the Grand Jury that heard the testimony of Mr. Conyers and members of the New York City Police Department, voted to not indict Mr. Conyers for any of the allegations made against him.

39. On the very next day, March 1st, 2016, the case of the People of the State of New York v. David Conyers was dismissed and sealed in its entirety.

40. On March 23rd, 2016, all charges against Plaintiff Lamel Nalley were dismissed and sealed.

41. This action has been commenced within one year and ninety days after the happening of the events upon which the claims are based.

42. Mr. Conyers and Mr. Nalley suffered severe damage as a result of defendants' actions. Plaintiffs were deprived of their liberty, suffered emotional distress, mental anguish, fear, pain, bodily injury, anxiety, embarrassment, humiliation, damage to their reputation, and deprivation of their constitutional rights.

**FIRST CAUSE OF ACTION**
*42 U.S.C. §§1981 and 1983 – Deprivation of Rights*
(Against the Individual Officer Defendants)

43. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs numbered "1" through "42" with the same force and effect as if fully set forth herein.

44. All of the aforementioned acts of defendants, their agents, servants and employees were carried out under the color of state law.

45. All of the aforementioned acts deprived plaintiffs DAVID CONYERS and LAMEL NALLEY, members of a protected race, of the rights, privileges and immunities guaranteed to the citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. §§1981 and 1983.

46. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto, and with the intent to discriminate on the basis of race.

47. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the CITY OF NEW YORK and the New York City Police Department, all under the supervision of ranking officers of said department.

48. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

49. Defendants violated the Fourth and Fourteenth Amendments because they stopped and detained plaintiffs without reasonable suspicion.

50. As a result, plaintiffs DAVID CONYERS and LAMEL NALLEY sustained the damages alleged herein.

## SECOND CAUSE OF ACTION

*42 U.S.C. § 1983 - Fourth and Fourteenth Amendment Violations for Unlawful Stop*
(Against the Individual Officer Defendants)

51. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs numbered "1" through "50" with the same force and effect as if fully set forth herein.

52. Defendants violated the Fourth and Fourteenth Amendment because they stopped plaintiffs without reasonable suspicion. Plaintiffs Conyers and Nalley were unlawfully stopped, searched and handcuffed without probable cause or reasonable suspicion.

53. As a result, Plaintiffs Conyers and Nalley sustained the damages alleged herein.

54. By virtue of the foregoing, the Defendant police officers deprived Plaintiffs Conyers and Nalley of their Fourth Amendment rights under the United States Constitution to be free from unlawful stop and are liable to plaintiff under 42 U.S.C. §1983.

### THIRD CAUSE OF ACTION
*42 U.S.C. § 1983 - Fourth and Fourteenth Amendment Violations for False Arrest*
(Against the Individual Officer Defendants)

55. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "54" with the same force and effect as if fully set forth herein.

56. As a result of Defendant police officers' aforementioned conduct, Plaintiffs Conyers and Nalley were subjected to illegal, improper, and false arrests by the defendants. Plaintiffs Conyers and Nalley were taken into custody and caused to be falsely imprisoned, detained, confined, incarcerated and prosecuted by the defendants in criminal proceedings.

57. In the above-mentioned actions, Defendant police officers acted intentionally, willfully, with malice, and without probable cause, privilege or consent.

58. Plaintiffs Conyers and Nalley were conscious of their confinement.

59. By virtue of the foregoing, the Defendant police officers deprived Plaintiffs Conyers and Nalley of their Fourth Amendment rights under the United States Constitution to be

free from false arrest and are liable to plaintiffs under 42 U.S.C. §1983.

## FOURTH CAUSE OF ACTION
*42 U.S.C. § 1983 - Fourth Amendment Violation for Excessive Force*
(Against the Individual Officer Defendants)

60. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs numbered "1" through "59" with the same force and effect as if fully set forth herein.

61. While in the course of their duties and while acting under color of law, Defendant police officers affected a seizure and arrest of Plaintiffs Conyers and Nalley by intentionally using excessive physical force against plaintiffs, including but not limited to pulling and pushing both Plaintiffs Conyers and Nalley repeatedly about their bodies, and applying the handcuffs to their wrists in an overly tight manner.

62. The physical force the Defendant police officers used on Plaintiffs Conyers and Nalley was objectively unreasonable and wholly unnecessary.

63. The Defendant police officers use of excessive physical force caused injuries, including but not limited to, severe pain to the plaintiffs' wrists, bruising to their wrists, and numbness that persisted for days.

64. By virtue of the foregoing, the Defendant police officers deprived Plaintiffs Conyers and Nalley of their Fourth Amendment rights under the United States Constitution to be free from excessive force and are liable to plaintiff under 42 U.S.C. §1983.

## FIFTH CAUSE OF ACTION
*42 U.S.C. § 1983 - Fourth Amendment Violations for Failure to Intervene*
(Against the Individual Officer Defendants)

65. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs numbered "1" through "64" with the same force and effect as if fully set forth herein.

66. Defendant police officers who did not participate in Plaintiff Conyers and Plaintiff

9

Nalley's arrests, but observed the unlawful actions alleged herein, had an opportunity to prevent such conduct, and failed to intervene.

67. By virtue of the foregoing, the Defendant police officers deprived Plaintiffs Conyers and Nalley of their Fourth Amendment rights under the United States Constitution to be free from unreasonable seizure and excessive force are liable to plaintiff under 42 U.S.C. §1983.

## SIXTH CAUSE OF ACTION
*42 U.S.C. § 1983- Fifth Amendment Violation of Due Process*
(Against Defendant City)

68. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs numbered "1" through "67" with the same force and effect as if fully set forth herein.

69. While in the course of their duties and while acting under color of law, Defendant Officers violated Plaintiffs Conyers and Nalley's guaranteed rights of due process under the Fifth Amendment of the United States Constitution when they falsely arrested, detained and searched Plaintiffs as described herein.

70. During all times relevant to this action, the New York City Police Department developed and maintained customs and practices exhibiting deliberate indifference to the constitutional rights of people in the City of New York. These customs and practices caused the violation of Plaintiffs' due process rights.

71. As a direct and proximate result of this unlawful conduct, Plaintiffs Conyers and Nalley sustained the damages herein alleged.

## SEVENTH CAUSE OF ACTION
Municipal Liability
(Against Defendant City under 42 U.S.C. §1983)

72. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs numbered "1" through "71" with the same force and effect as if fully set forth herein.

73. The widely held assumption is that civil rights lawsuits deter police misconduct. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161, (1992) citing Carey v. Piphus, 435 U.S. 247, 254-257, (1978). "As far as we know, civil liability is an effective deterrent [to civil rights violations], as we have assumed it is in other contexts." See Hudson v. Michigan 547 U.S. 586, 598 (2006) citing Correctional Services Corp. v. Malesko, 534 U.S. 61, 70 (2001) and Nix v. Williams, 467 U.S. 431, 446, (1984). "It is almost axiomatic that the threat of damages has a deterrent effect (citation omitted) surely particularly so when the individual official faces personal financial liability." Carlson v. Green, 446 U.S. 14, 21, (1980), citing Imbler v. Pachtman, 424 U.S. 409, 442, and footnote 6 (1976).

74. However, the City of New York has insulated NYPD officers like Detective Keith McDowell, Undercover Police Officer #338, Undercover Police Officer #239, Detective Jonathan Quinto, and Police Officer Efrain Morales, from accountability for civil rights lawsuits by indemnifying officers who violate the constitutional rights of citizens, and, as a result, is preventing civil rights lawsuits from having any deterrent value to the City, the NYPD or its officers. Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the expense to the City of the officers' lawsuit liability, even after multiple lawsuits.

75. Nevertheless, the City has repeatedly resisted attempts to catalog even basic information gleaned from civil rights lawsuits that could improve training, leadership, supervision, and discipline in the NYPD. The City's deliberate indifference towards the contents of civil rights litigation, individual officers repeatedly named in lawsuits, incidents repeatedly occurring in the

same division, and patterns of misconduct that arise in civil rights litigation has caused the constitutional violations of excessive force and false arrest suffered by plaintiffs.

76. Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct or to calculate the total liability of an individual officer or of a precinct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected, problematic supervision or leadership at the precinct level goes ignored, and repeated misconduct by individual officers goes unaccounted for. Even occasional judicial findings that officers have testified incredibly are not reported routinely to the police department or any oversight agencies.

77. All of the aforementioned has created a climate where police officers and detectives lie to prosecutors and in police paperwork and charging instruments, and testify falsely, with no fear of reprisal. "Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration-through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department-there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged." See Colon v. City of New York, et al, 2009 WL 4263362 (E.D.N.Y.) (Weinstein, J.).

78. In Floyd v. City of New York, 08-cv-01034-SAS-HBP, Judge Scheindlin found that the City acted with "deliberate indifference toward the NYPD's practice of making unconstitutional stops and conducting unconstitutional frisks" and adopted "a policy of indirect

12

racial profiling by targeting racially defined groups for stops based on local crime suspect data."

(Opinion and Order, dated August 12, 2013, P.13).

79. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiff's civil rights, without fear of reprisal.

80. Plaintiffs have been damaged as a result of the deliberate indifference of the Defendant City and deprived of federal protected rights, including, but not limited to, the right:

    a. Not to be deprived of liberty without due process of law;

    b. To be free from false arrest;

    c. To be free from excessive force;

    d. To be free from malicious abuse of process;

    e. To be free from retaliation for the exercise of free expression;

    f. To be free from failure to intervene.

81. The foregoing acts and conduct of defendants were a direct and proximate cause of injury and damage to plaintiffs and violated the common law rights guaranteed to them by the Constitution of the United States of America.

### EIGHTH CAUSE OF ACTION
(Malicious Prosecution under 42 U.S.C. §1983)

82. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs numbered "1" through "81" with the same force and effect as if fully set forth herein.

83. By their conduct, as described herein, and acting under color of state law, defendants are liable to plaintiffs DAVID CONYERS and LAMEL NALLEY under 42 U.S.C.

§1983 for the violation of their constitutional rights to be free from malicious prosecution under the Fourth and Fourteenth Amendments to the United States Constitution.

84. Defendants' unlawful actions were done willfully, knowingly, with malice and with the specific intent to deprive plaintiffs of their constitutional rights. The prosecution by defendants of plaintiffs constituted malicious prosecution in that there was no basis for the plaintiffs' arrests, yet defendants continued with the prosecution, which was resolved in plaintiffs' favor.

85. As a direct and proximate result of the misconduct and abuse of authority stated above, plaintiffs sustained the damages alleged herein.

### NINTH CAUSE OF ACTION
(Malicious Abuse of Process under 42 U.S.C. §1983)

86. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs numbered "1" through "85" with the same force and effect as if fully set forth herein.

87. Defendants arrested Plaintiffs Conyers and Nalley and chose to process and prosecute them in Brooklyn Criminal Court for the collateral objective of covering up their acts of brutality and abuse of authority during the arrest of the Plaintiffs.

88. Defendants thereby caused Plaintiffs Conyers and Nalley to be deprived of their right to be free from malicious abuse of process.

**WHEREFORE,** plaintiffs demand a jury trial and the following relief jointly and severally against the defendants:

a. Full and fair compensatory damages in an amount to be determined by a jury;

      b.     Punitive damages in an amount to be determined by a jury;

      c.     Costs, interest and attorney's fees, pursuant to 42 U.S.C. §1988; and

      d.     Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

Dated: New York, New York
       June 2, 2016                            By:    Benjamin Zeman

                                                      Benjamin Zeman
                                                      Attorney for Plaintiffs
                                                      Moore Zeman Womble, LLP
                                                      66 Willoughby St.
                                                      Brooklyn, New York 11201
                                                      (T) (718) 514-9100
                                                      (F) (917) 210-3700
                                                      zeman@mzwlegal.com